# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

-------------------------------------------------------x    Chapter 11

In re:                              :

                                  :    Case No. 18-91575-BHL-11

Buehler, LLC,[1]                  :

                                  :    (Jointly Administered)

                Debtors.      :

-------------------------------------------------------x    Honorable Basil H. Lorch III

### DEBTORS BUEHLER, INC.'S AND BUEHLER, LLC'S PLAN OF
### REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Dated: May 22, 2019                  Respectfully submitted,

                                          /s/ James R. Irving
                                          James R. Irving
                                          Christopher B. Madden
                                          BINGHAM GREENEBAUM DOLL LLP
                                          3500 PNC Tower
                                          101 South Fifth Street
                                          Louisville, Kentucky 40202
                                          Telephone:     (502) 587-3606
                                          Facsimile:     (502) 540-2215
                                          E-mail:        jirving@bgdlegal.com
                                                                  cmadden@bgdlegal.com

                                          *Counsel to the debtors in possession Buehler, Inc. and Buehler, LLC*

---

[1]      The last four digits of Buehler, LLC's taxpayer identification numbers are (0204).  Buehler, LLC's mailing address is 307 Newton Street, Jasper, IN 47546.

20161070.1

**TABLE OF CONTENTS**

**Page**

ARTICLE I    DEFINED TERMS AND RULES OF INTERPRETATION................................ 1

    A.    Defined Terms ........................................................................................ 1

    B.    Rules of Interpretation ......................................................................... 11

    C.    Exhibits ................................................................................................ 12

ADMINISTRATIVE AND PRIORITY CLAIMS ......................................................... 12

    A.    Administrative Claims Bar Dates ......................................................... 12

    B.    Accrued Professional Compensation .................................................... 13

    C.    Payment of Allowed Administrative Claims and Allowed Claims for Accrued Professional Compensation ..................................................... 13

    D.    Priority Tax Claims ............................................................................... 13

    E.    Other Priority Claims ........................................................................... 13

ARTICLE II    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ....................................................................................... 13

    A.    Summary .............................................................................................. 13

    B.    Classification and Treatment of Claims and Equity Interests............... 14

    C.    Nonconsenual Confirmation ................................................................ 16

ARTICLE III  MEANS FOR IMPLEMENTATION OF THE PLAN.................................... 17

    A.    Vesting of Assets .................................................................................. 17

    B.    Substantive Consolidation of the Debtors............................................. 17

    C.    Reorganized Debtor to Effectuate Distributions................................... 17

    D.    Corporate Authority .............................................................................. 18

    E.    Liquidation of the Debtors .................................................................... 18

    F.    Creation of the Reorganized Debtor ..................................................... 18

    G.    Operations of the Debtors Between the Confirmation Date and the Effective Date ...................................................................................... 18

    K.    Term of Injunctions or Stays................................................................. 19

ARTICLE IV  PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS ................... 19

    A.    Voting of Claims .................................................................................. 19

    B.    Distribution Dates ................................................................................ 19

    C.    Disbursing Agents................................................................................. 19

    D.    Record Date for Distributions ............................................................... 20

    E.    Delivery of Distributions ...................................................................... 20

**TABLE OF CONTENTS**
(continued)

Page

F.      Undeliverable and Unclaimed Distributions ..................................................... 20

G.      Manner of Cash Payments Under the Plan ...................................................... 20

H.      Compliance with Tax Requirements ................................................................ 20

I.      No Payments of Fractional Dollars .................................................................. 21

J.      Interest on Claims ............................................................................................ 21

K.      No Distribution in Excess of Allowed Amount of Claim ................................. 21

L.      Setoff and Recoupment ................................................................................... 21

M.      De Minimis Distributions; Charitable Donation ............................................. 21

N.      United States Trustee Fees .............................................................................. 22

O.      No Distributions on Late-Filed Claims ........................................................... 22

ARTICLE V      DISPUTED CLAIMS ............................................................................ 22

A.      No Distribution Pending Allowance ................................................................. 22

B.      Resolution of Disputed Claims ........................................................................ 22

C.      Objection Deadline .......................................................................................... 23

D.      Estimation of Claims ....................................................................................... 23

ARTICLE VI    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
                LEASES ................................................................................................. 23

ARTICLE VII   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .................. 23

A.      Conditions Precedent ....................................................................................... 23

B.      Waiver .............................................................................................................. 24

ARTICLE VIII  INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED
                PROVISIONS ........................................................................................ 24

A.      Compromise and Settlement ............................................................................ 24

B.      Releases ............................................................................................................ 24

C.      Exculpation ...................................................................................................... 25

D.      Preservation of Causes of Action .................................................................... 25

E.      Injunction ........................................................................................................ 27

F.      Releases of Liens ............................................................................................. 28

ARTICLE IX    RETENTION OF JURISDICTION ....................................................... 28

ARTICLE X     MISCELLANEOUS PROVISIONS ....................................................... 29

A.      Modification of Plan ........................................................................................ 29

**TABLE OF CONTENTS**
(continued)

Page

| | | | |
|---|---|---|---|
| B. | Revocation of Plan | | 29 |
| C. | Binding Effect | | 30 |
| D. | Successors and Assigns | | 30 |
| E. | Governing Law | | 30 |
| F. | Reservation of Rights | | 30 |
| G. | Article 1146 Exemption | | 30 |
| H. | Section 1125(e) Good Faith Compliance | | 31 |
| I. | Further Assurances | | 31 |
| J. | Service of Documents | | 31 |
| K. | Filing of Additional Documents | | 31 |
| L. | No Stay of Confirmation Order | | 31 |
| M. | AWG Post-Confirmation Credit | | 31 |
| N. | Survival of Carve-Outs | | 32 |

**DEBTORS BUEHLER, INC.'S AND BUEHLER, LLC'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

      Buehler, Inc. and Buehler, LLC, the Debtors and Debtors-in-Possession in the above-captioned and numbered cases, hereby respectfully proposes the following plan of liquidation under chapter 11 of the Bankruptcy Code.[2]

**ARTICLE I**

**DEFINED TERMS AND RULES OF INTERPRETATION**

**A.  Defined Terms**

      Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

      1.     "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees for legal, financial advisory, accounting and other professional services and reimbursement of expenses of such professionals that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code, or otherwise rendered prior to the Effective Date, including in connection with (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order by all Professionals in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (c) applications for allowance of Administrative Claims arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code.  To the extent the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses or any such Professional voluntarily waives or reduces its fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

      2.     "*Administrative Claims*" means Claims for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses incurred on and after the Petition Date and before the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises).  Notwithstanding the foregoing, (i) any fees or charges assessed against the Estate of the Debtor under section 1930 of Chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claims and shall be paid in accordance with Article II of the Plan, and (ii) Accrued Professional Compensation is excluded from the definition of Administrative Claims and shall be paid in accordance with Article II of the Plan.

---

[2]     All capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Bankruptcy Code.

3.      "*Administrative Claims Bar Dates*" means _____, 2019.

4.      "*Allowed*" means, with respect to any Claim or Equity Interest, except as otherwise provided by a Final Order of the Bankruptcy Court:  (a) a Claim or Equity Interest that has been scheduled by the Debtor in its schedules of liabilities that has been Filed by the Claims Objection Bar Date; (b) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (c) a Claim or Equity Interest that has been reviewed and deemed allowed by the Reorganized Debtor; (d) a Claim or Equity Interest that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court by a Final Order or (ii) in any stipulation with the Debtor or amount and nature of Claim or Equity Interest executed on or after the entry of the Confirmation Order; (e) a Claim or Equity Interest that is deemed allowed pursuant to the terms hereof or Allowed in the Confirmation Order; of (f) a Disputed Claim as to which a proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

5.      "*Assets*" means all assets of the Debtor as of the Effective Date, including all Cash of the Estate, Causes of Action, Books and Records and Privileges.

6.      "*AWG*" means Associated Wholesale Grocers, Inc.

7.      "*AWG Secured Claim*" means the secured claim held by AWG against the Debtors in the approximate amount of $122,450.67, which is reflected in the Schedules and Claim No. 64-1 filed in Buehler, Inc.'s bankruptcy case and Claim No. 18-1 in Buehler, LLC's bankruptcy case.

8.      "*Ballot*" means the form of ballot, approved by the Disclosure Statement Order, used to record votes in favor of or opposed to the Plan.

9.      "*Bankruptcy Code*" means section 101, *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as in effect as of the Petition Date.

10.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Indiana, or such other court of competent jurisdiction exercising jurisdiction over the Debtor and the Assets or any portion thereof, or any proceeding arising under or related to the Bankruptcy Code or the Chapter 11 Case.

11.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

12.      "*Bar Date Order*" means the *Order Establishing Deadlines for Filing Proofs of Claim and Section 503(b)(9) Claim Requests and Approving the Form and Manner of Notice Thereof* [Docket No. 135].

13.     "*Books and Records*" means all books and records of the Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

14.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

15.     "*Cash*" means cash and cash equivalents, including, but not limited to bank deposits, liquid investments, checks and similar items.

16.     "*Causes of Action*" means claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, defenses, rights of setoff, recoupment, subrogation, contribution, reimbursement or indemnity, counterclaims and crossclaims against any other Person, based in law and/or equity, whether under the Bankruptcy Code or other applicable law, whether direct, indirect, derivative or otherwise, whether known, suspected or unsuspected and whether asserted or unasserted as of the Effective Date.  For the avoidance of any doubt, "Causes of Action" includes, without limitation all claims and any avoidance, preference, recovery, fraudulent transfer, subordination or other actions against insiders and/or any other entities under the Bankruptcy Code.  The Schedules set forth a list of transfers of property made by the Debtor before the Petition Date, and the recipients of such transfers should be aware that they may be liable for an avoidance, preference, recover, fraudulent transfer, etc. as defined under the Bankruptcy Code.  However, the mere fact that a party is not listed in the Schedules, the Plan or the Disclosure Statement does not mean that the Debtor does not hold a Cause of Action against that party.

17.     "*Chapter 11 Cases*" means the chapter 11 cases commenced when the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date.

18.     "*Claim*" means a "claim," as that term is defined in section 101(5) of the Bankruptcy Code, against the Debtor.

19.     "*Claims Objection Bar Date*" means the deadline for objecting to Claims, which shall be the forty-fifth (45th) day following the Effective Date; *provided*, *however*, that the Debtors or the Reorganized Debtor upon notice and motion may seek extensions of this date from the Bankruptcy Court.

20.     "*Class*" means a category of Claims or Equity Interests as set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

21.     "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

22.     "*Confirmation Hearing*" means the hearing before the Bankruptcy Court scheduled for _____, 2019 during which the Debtors will seek confirmation of the Plan.

23. "*Confirmation Hearing Notice*" means that certain confirmation hearing notice filed with the Bankruptcy Court following entry of the Disclosure Statement Order.

24. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25. "*Creditor*" means a "creditor" as that term is defined in section 101(10) of the Bankruptcy Code.

26. "*Debtors*" means Buehler, Inc. and Buehler, LLC.

27. "*Disbursing Agent*" means the Reorganized Debtor.

28. "*Disclosure Statement*" means the *Disclosure Statement for Debtors Buehler, Inc. and Buehler, LLC's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, as it is amended, supplemented or modified from time to time.

29. "*Disclosure Statement Order*" means the order approving the Disclosure Statement.

30. "*Disputed*" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest:  (a) listed on the Schedules as unliquidated, disputed or contingent, unless a Proof of Claim in a liquidated amount has been timely filed; (b) as to which the Debtors, the Reorganized Debtor or other party has interposed a timely objection or request for estimation in accordance with this Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; *provided*, *however*, that for purposes of this Plan, the Reorganized Debtor shall have the power, up to and including the Claims Objection Bar Date, to determine a Claim to be Disputed upon review of the claims register and the Books and Records and may cause the amendment of the Schedules to reflect any such determination.

31. "*Distributions*" means the distributions of Cash to be made in accordance with the Plan.

32. "*Effective Date*" means the date selected by the Debtor that is a Business Day after the entry of the Confirmation Order on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII have been satisfied or waived.

33. "*Entity*" means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

34. "*Equity Interest*" means any "equity security" as that term is defined in section 101(16) of the Bankruptcy Code in the Debtor that existed immediately prior to the Petition

Date.

35.      "*Estates*" means the estate of the Debtors created on the Petition Date by section 541 of the Bankruptcy Code.

36.      "*Exculpated Parties*" means, collectively, the Debtors, the officers and directors of the Debtors serving in such capacities immediately prior to the Effective Date, and the Debtors' Professionals (each of the foregoing in its individual capacity as such).

37.      "*File*" or "*Filed*" means, with respect to any motion, pleading or other document, entered on the docket of the Chapter 11 Cases.

38.      "*Final Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days after the Effective Date and is the deadline for a holder of an Administrative claim to file a request with the Bankruptcy Court for payment of such Administrative Claim in the manner indicated in Article II herein; *provided*, *however*, that Administrative Claims that arise between the Petition Date and the Closing Date or under section 503(b)(9) of the Bankruptcy Code shall only be deemed timely filed for purposes of this Plan to the extent such Claims were filed in accordance with the terms of the Initial Administrative Bar Date Order and the Bar Date Order.  The Debtors shall file a separate motion seeking to establish the Final Administrative Claims Bar Date and shall separately notice such date.

39.      "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

40.      "*Final Order*" means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended, and s to which the time to file an appeal, motion for reconsideration or rehearing (excluding the times prescribed by Bankruptcy Rules 9023 and 9024), or request for a stay has expired.

41.      "*General Unsecured Claims*" means Claims against the Debtors that are not Administrative Claims, Priority Tax Claims, Other Priority Claims, Moran Secured Claims, AWG Secured Claims, ONB Secured Claims, Mr. Buehler's Unsecured Claims, or Equity Interests.

42.      "*Governmental Unit*" means a "governmental unit" as that term is defined in section 101(27) of the Bankruptcy Code.

43.      "*Impaired*" means "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to any Class of Claims or Equity Interests.

44.      "*Initial Distribution Date*" means the date that is as soon as practicable after the Administrative Claims Bar Date, when Distributions under this Plan shall commence to holders of Allowed Claims.

45.      "*Lien*" shall mean a "lien" as that term is defined in section 101(37) of the Bankruptcy Code, including, without limitation, a deed of trust, mortgage, charge, security

interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

46. *"Moran"* means Moran Foods, Inc. d/b/a Save-a-Lot.

47. *"Moran Secured Claim"* means those secured claims held by Moran and reflected in the Debtors' Schedules.

48. *"Mr. Buehler"* means Mr. David Buehler.

49. *"Mr. Buehler's General Unsecured Claims"* means those claims held by Mr. David Buehler and/or his wife Brenda Buehler against the Debtors, including but not limited to, those claims in the aggregate amount of approximately $1,600,000 in lines 3.1, 3.2, and 3.103 of Buehler, LLC's Schedules.

50. *"New Equity Interests"* means 100% of the equity interests in the Reorganized Debtor, which shall be held by Mr. Buehler in contemplation of his substantial contribution to the Debtors' reorganization, including but not limited to, the voluntary subordination of Mr. Buehler's General Unsecured Claims, going-forward operation of the Reorganized Debtor, and commitment that the Reorganized Debtor will make the Reorganized Debtor Contribution.

51. *"ONB"* means Old National Bank.

52. *"ONB Secured Claim"* means those claims in approximate aggregate amount of $484,886.24 held by ONB and secured by a lien on Buehler, Inc.'s assets, including those claims set forth in the Schedules and Claim Nos. 59-1 and 60-1 filed in Buehler, Inc.'s bankruptcy case.

53. *"Other Priority Claims"* means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

54. *"Person"* means a "person" as that term is defined in section 101(41) of the Bankruptcy Code, including, without limitation, any individual or Entity.

55. *"Petition Date"* means October 17, 2018, the date on which the Debtors commenced the Chapter 11 Cases.

56. *"Plan"* means the plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court, as the case may be.

57. *"Plan Objection Deadline"* means the deadline for parties-in-interest in the Chapter 11 Cases to object to the Plan, and which is set forth in the Disclosure Statement Order as _____, 2019.

58. *"Priority Tax Claims"* means Claims of Governmental Units accorded priority in

right of payment under section 507(a) of the Bankruptcy Code.

59.     "*Privileges*" means the right to assert or waive any privilege, including, but not limited to, any attorney-client privilege, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written, electronic or oral), and control over or rights to direct current or former agents, attorneys, advisors and other professionals of the Debtor with respect thereto.

60.     "*Professional*" means any Person employed in the Chapter 11 case pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

61.      "*Protected Parties*" means the Debtor and their respective officers, directors, current (but not former) employees, current (but not former) independent contractors, members, shareholders, advisors, attorneys, representatives, professionals and other agents.

62.     "*Record Date*" means the date that the Disclosure Statement Order is entered on the docket by the Bankruptcy Court.

63.     "*Released Parties*" means, collectively: (i) the Reorganized Debtor; (ii) the Debtors; and (iii) the Debtor's officers, directors and employees, including Mr. Buehler; as well as, (iv) for the Entities listed in (i) through (iii) their respective current and former affiliates, subsidiaries, officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

64.     "*Releasees*" means the Debtor's Professionals.

65.     "*Releasing Parties*" means, collectively, holders of Claims or Equity Interests who do not opt out of the Plan's release provisions with respect to the Released Parties pursuant to an election contained on the relevant ballot to vote to accept or reject the Plan.

66.      "*Reorganized Debtor*" means the new entity to be created in which the assets of the Debtors will vest upon the Effective Date and which new entity will be vested with powers and authority under the terms of the Plan.

67.      "*Reorganized Debtor Contribution*" means a total of $75,000 to be distributed pro rata to the holders of General Unsecured Claims in Class 4 in complete and full satisfaction of those holders' claims.  The first $25,000 will be paid as of the Effective Date, the second $25,000 will be paid on the first Business Day that is six months after the Effective Date, and the third $25,000 will be distributed on the first Business Day that is one year after the Effective Date.

68.     "*Representatives*" means, with regard to a Person (including the Debtor), any current or former officers, directors, employees, advisors, attorneys, professionals (including Professionals), accountants, investment bankers, financial advisors, consultants, agents and other

representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

69.    "*Sale Order*" means the *Order Approving (I) Private Sale of Certain Assets Used in the Operation of Certain Save-a-Lot Stores Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto* [Docket No. 285] entered in the Chapter 11 Cases on March 22, 2019.

70.    "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs pursuant to section 521 of the Bankruptcy Code Filed by the Debtors, as may be amended or modified from time to time.

71.    "*Solicitation Procedures*" means the solicitation procedures set forth in the Disclosure Statement Order.

72.    "*Subsequent Distribution Date*" means any date that a Distribution not made on the Initial Distribution Date is made.

73.    "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in Region X, including the Southern District of Indiana.

74.    "*Voting Agent*" means Bingham Greenebaum Doll LLP.

75.    "*Voting Deadline*" means the deadline of __, 2019, to accept or reject the Plan.

76.    "*Voting Record Date*" means __, 2019, the date on which holders of Claims that are entitled to vote to accept or reject the Plan will be determined.

**B. Rules of Interpretation**

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or an particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined

but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.  All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### C.  Exhibits

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth herein.  All exhibits and schedules to the Plan, shall be Filed with the Clerk of the Bankruptcy Court not later than fourteen (14) days prior to the hearing to determine whether to confirm the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtors by a written request sent to the following address:

James R. Irving
Bingham Greenebaum Doll LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202

### ADMINISTRATIVE AND PRIORITY CLAIMS

### A.  Administrative Claims Bar Dates

1.  By the Bar Date Order, the Bankruptcy Court has already established January 31, 2019 as the Section 503(b)(9) Claim Deadline, the deadline for parties to submit a request for payment of an Administrative Claim incurred under section 503(b)(9) of the Bankruptcy Code.

2.  Except as otherwise provided herein, on the Administrative Claims Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court and serve on counsel for the Debtors/Reorganized Debtor, any request for payment of an unpaid Administrative Claim.  Requests for payment of an Administrative Claim must include at a minimum: (i) the name of the holder of the Administrative Claim; (ii) the amount of the asserted Administrative Claim; (iii) the basis of the Administrative Claim; and (iv) all supporting documentation for the Administrative Claim.

3.  Any request for payment of an Administrative Claim will be timely Filed only if it is Filed with the Bankruptcy Court by the Administrative Claim Bar Date; *provided*, *however*, that a request for payment of an Administrative Claim arising under section 503(b)(9) of the Bankruptcy Code shall be deemed timely only to the extent such request was submitted in accordance with the terms of the Bar Date Order.

4.      Notwithstanding anything herein, the Debtors' Professionals shall not be required to file a request for payment of Accrued Professional Compensation on or before the Administrative Claims Bar Date. Such Professionals will instead file final fee applications as required by the Bankruptcy Code, Bankruptcy Rules, Confirmation Order and Plan.

### B.  Accrued Professional Compensation

The deadline for submission by Professionals for Bankruptcy Court approval of Accrued Professional Compensation shall be the forty-fifth (45th) day following the Effective Date.

### C.  Payment of Allowed Administrative Claims and Allowed Claims for Accrued Professional Compensation

The Reorganized Debtor shall pay each holder of a timely-Filed, Allowed Administrative Claim and Allowed Claim for Accrued Professional Compensation the full unpaid amount of such Allowed Administrative Claim or Allowed Claim for Accrued professional Compensation in Cash: (1) on the Effective Date or as soon as practicable thereafter if such Administrative Claim is an Allowed Administrative Claim as of the Effective Date; (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter; (3) at such time and upon such terms as may be agreed upon by such holder and the Reorganized Debtor; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

### D.  Priority Tax Claims

The Reorganized Debtor shall pay each holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the latest of (i) the Effective Date or as soon as practicable thereafter, and (ii) the date such Priority Tax Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law, provided that such Allowed Priority Tax Claim shall be paid prior to the assessment of any penalty by the applicable Governmental UnitUnit.

### E.  Other Priority Claims

The Reorganized Debtor shall pay each holder of an Allowed Other Priority Claim the full unpaid amount of such Allowed Other Priority Claim in Cash, on the latest of (i) the Effective Date or as soon as practicable thereafter, and (ii) the Other Priority Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed priority Tax Claim is payable under applicable non-bankruptcy law, provided that such Allowed Other Priority Claim is payable under applicable non-bankruptcy law.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.  Summary

a.    In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims and Other Priority Claims, as described in Article II of the Plan.

b.    The following table classifies Claims against and Equity Interests in the Debtors for all purposes including voting, confirmation and Distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest asserted in that Class is Allowed and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

c.    Summary of Classification and Treatment of Classified Claims and Equity Interests:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Moran Secured Claim | Unimpaired | Not Entitled to Vote |
| 2 | AWG Secured Claim | Impaired | Entitled to Vote |
| 3 | ONB Secured Claim | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Mr. Buehler's Unsecured Claims | Impaired | Deemed to Reject |
| 6 | Equity Interests | Impaired | Deemed to Reject |

**B.  Classification and Treatment of Claims and Equity Interests**

a.  Moran Secured Claim (Class 1)

   i.   **Classification:**  Class 1 consists of the Moran Secured Claim.

   ii.  **Treatment:**  As set forth in the Private Sale Order, the Moran Secured Claim was satisfied via a credit bid for the purchase of the Debtors' Save-a-Lot branded grocery stores.

   iii. **Voting:**  Class 1 is Unimpaired and, therefore, Moran, the sole holder of the Moran Secured Claim (Class 1), is not entitled to vote to accept or reject the Plan.

b.  AWG Secured Claim (Class 2)

    iv.  **Classification:**  Class 2 consists of the AWG Secured Claim.

    v.  **Treatment:**  The AWG Secured Claim will be satisfied under the terms of an amended promissory note which will waive certain interest payments, extend the maturity date under the existing note, and provide for monthly payments that the Reorganized Debtor will begin making after the Effective Date.  The Reorganized Debtor's obligations to AWG will be secured by a blanket lien on its assets.  The existing pre-Petition Date security agreement between the Debtors and AWG shall continue in full force and effect post-confirmation.

    vi.  **Voting:**  Class 2 is Impaired and, therefore, AWG, the sole holder of the AWG Secured Claim (Class 2), is entitled to vote to accept or reject the Plan.

c.  ONB Secured Claim (Class 3)

    vii.  **Classification:**  Class 3 consists of the ONB Secured Claim.

    viii.  **Treatment:**  The ONB Secured Claim will be satisfied under the terms of a settlement between the Debtors, Mr. Buehler, and ONB under the terms of which Mr. Buehler will surrender the cash value of his insurance policy to ONB and the Debtors will make a payment to ONB so that ONB receives $600,000 in cash value to satisfy all of its claims against the Debtors and Mr. Buehler on the ONB Secured Claim and ONB's other claims against Mr. Buehler.

    ix.  **Voting:**  Class 3 is Impaired and, therefore, ONB, the sole holder of the ONB Secured Claim (Class 3), is entitled to vote to accept or reject the Plan.

b.  General Unsecured Claims (Class 4)

    i.  **Classification:**  Class 4 consists of the General Unsecured Claims.

    ii.  **Treatment:** Except to the extent that a holder of an Allowed General Unsecured Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable classification and treatment, each holder of an Allowed General Unsecured Claim shall receive their Pro Rata share of the Reorganized Debtor Contribution.  Distributions to holders of Allowed General Unsecured Claims shall be made as soon as practicable as the Reorganized Debtor may determine in its sole discretion.

    iii.  **Voting:**  Class 4 is Impaired and, therefore, holders of General Unsecured Claims (Class 4) are entitled to vote to accept or reject the Plan.

20161070.1

c.   Mr. Buehler's Unsecured Claim (Class 5)

i.   **Classification:**  Class 5 consists of Mr. Buehler's Unsecured Claim.

ii.   **Treatment:**  Mr. Buehler's Unsecured Claim shall be subordinated to the General Unsecured Claims and there will not be any distributions to satisfy it.

iii.   **Voting:**  Class 5 will receive no Distribution under the Plan and, therefore, under section 1126(g) of the Bankruptcy Code Mr. Buehler, the sole holder of Mr. Buehler's Unsecured Claim (Class 5), is deemed to reject the Plan.

d.   Equity Interests (Class 6)

i.   **Classification:**  Class 6 consists of Equity Interests.

ii.   **Treatment:** Holders of Equity Interests in Class 6 shall receive no Distribution under the Plan.

iii.   **Voting:**  Class 6 will receive no Distribution under the Plan and, therefore, under section 1126(g) of the Bankruptcy Code holders of Equity Interests (Class 6) are deemed to reject the Plan.

**C.  Nonconsenual Confirmation**

If holders of Claims in Classes 2, 3 and/or 4 do not vote to accept the Plan by the requisite statutory majority provided in section 1126 of the Bankruptcy Code, the Debtors reserves the right to amend the Plan.  The Debtors intend to request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by holders of Claims and Equity Interests in Classes 5 and 6.

## ARTICLE III

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.Vesting of Assets**

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Debtors' bankruptcy estate, the Assumed Contracts, the Causes of Action and any property acquired by any of the Debtors pursuant to the Plan shall vest in each the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, the Debtors' Intellectual

Property shall vest in the Reorganized Debtors.

The Reorganized Debtors shall continue to exist after the Effective Date as a separate corporate entity with all the power of a limited liability company pursuant to Indiana state law.

## B.  Substantive Consolidation of the Debtors

The Plan provides for the substantive consolidation of the Debtors' bankruptcy estates only for purposes of voting, confirmation and distribution.  In addition to what is set forth in this Plan, the Debtors shall file a motion for substantive consolidation.

a. *Substantive Consolidation Order*. The Debtors shall file a motion seeking entry of an order substantively consolidating these Chapter 11 Cases for purposes of voting, confirmation and distribution. Unless an objection to substantive consolidation is made in writing by any Creditor affected by the Plan on or before the deadline for doing so, an order substantively consolidating these Chapter 11 Cases may be entered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, coincide with the Confirmation Hearing.

b. *Effect/Extent of Substantive Consolidation*. In effectuation of such substantive consolidation, on the Effective Date: (a) no Distributions will be made under the Plan on account of the Intercompany Claims against each of the Debtors; (b) the guarantees of the Debtors will be deemed eliminated so that any Claim against the Debtors and any guarantee thereof executed by any Debtor and any joint and several liability of the Debtors with one another will be deemed to be one obligation of these Debtors; and (c) each and every Claim against the Debtors will be deemed asserted as a single Claim against the Estates as a whole, and will be treated in the same Class regardless of the Debtor. Additionally, notwithstanding the substantive consolidation, substantive consolidation shall not affect the obligation of each and every one of these Debtors under 28 U.S.C. § 1930(a)(6) until a particular case is closed, converted or dismissed.

c. *Reservation of Rights*. The Debtors reserve the right at any time up to the conclusion of the Confirmation Hearing to withdraw their request for substantive consolidation of these chapter 11 Cases, to seek confirmation of the Plan as if there were no substantive consolidation, and to seek confirmation of the Plan with respect to one Debtor even if confirmation with respect to the other Debtors is denied.

## C.  Reorganized Debtor to Effectuate Distributions

The Reorganized Debtor shall be deemed to have been appointed as the Debtors' bankruptcy estates' representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  In accordance with this Plan, the Reorganized Debtor shall (i) pay to each holder of an Allowed Administrative Claim, Allowed Priority Tax Claim and Allowed Other Priority Claim, the full unpaid amount of each such Allowed Claim; and (ii) make Distributions to the holders of claims in Classes 2, 3 and 4 as set forth in the Plan.

### D.  Corporate Authority

All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need for further approvals, notices, or meetings of the Debtors' board of directors or Equity Interest holders, other than the notice provided by serving the Plan or notices of the entry of the Confirmation order and of the Effective Date of the Plan on (i) all known holders of Claims and (ii) all current directors of the Debtors.  The Confirmation Order shall include provisions dispensing with the need for further approvals, notices, or meetings of any of the Debtors' board of directors or Equity Interest holders and authorizing and directing any officer of the Debtors to execute any document, certificate, or agreement necessary to effectuate the Plan on behalf of the Debtors, which documents, certificates, and agreements shall be binding on the Debtors, the Creditors, and all Equity Interest holders.  From and after the Effective Date, the Reorganized Debtor is vested with authority to take any action contemplated by this Plan on behalf of the Debtors that would otherwise require the approval of members, board of directors, or officers of the Debtors.  From and after the Effective Date, the authority, power and incumbency of the persons then acting as directors and/or officers of the Debtors shall be terminated and such directors and/or officers shall be deemed to have resigned or to have been removed without cause and have no further duties or responsibilities with respect to the Debtors.

### E.  Liquidation of the Debtors

After the Effective Date, the Reorganized Debtor shall: (a) file a certificate of dissolution, together with all other necessary corporate documents, to effect the dissolution of the Debtors and any of its subsidiaries, if applicable, under the applicable laws of the State of Indiana; and (b) complete and file the Debtors' final federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of the Debtors or their Estate for any tax incurred during the administration of the Chapter 11 Cases or through the date of such dissolution, as determined under applicable tax laws.  The filing of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action by the stockholders or the board of directors of the Debtors; *provided*, *however*, in no event shall the Debtors be dissolved later than three (3) years following the Effective Date.

### F.  Creation of the Reorganized Debtor

*The Reorganized Debtor will be formed as a business organization under Indiana state law.  Mr. Buehler will have 100% of the New Equity Interests in the Reorganized Debtor* in contemplation of his substantial contribution to the Debtors' reorganization, including but not limited to, the voluntary subordination of Mr. Buehler's General Unsecured Claims, going-forward operation of the Reorganized Debtor, and commitment that the Reorganized Debtor will make the Reorganized Debtor Contribution.  As set forth herein, the Reorganized Debtor will be a Released Party of all of the Debtors' obligations and claims except as explicitly contemplated in the Plan.  As set forth in the Plan, all of the Debtors' assets will vest in the Reorganized Debtor as of the Effective Date.

### G.  Operations of the Debtors Between the Confirmation Date and the Effective Date

The Debtors shall continue to operate as debtors-in-possession during the period from the Confirmation Date through and until the Effective Date.

### H.  Term of Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.

## ARTICLE IV

### PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

### A. Voting of Claims

Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to Article III of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan or other order or orders of the Bankruptcy Court.

### B.  Distribution Dates

Distributions to holders of Claims shall be made as provided in Article III of the Plan.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### C.  Disbursing Agent

All distributions under the Plan by the Reorganized Debtor shall be made by the Reorganized Debtor as Disbursing Agent or such other entity designated by Reorganized Debtor as Disbursing Agent.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform his duties under the Plan, (b) make all Distributions contemplated by the Plan, (c) employ professionals to represent him with respect to his responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

The Disbursing Agent shall only be required to act and make Distributions in accordance with the terms of the Plan and shall have no (x) liability for actions taken in accordance with the Plan or in reliance upon information provided to him in accordance with the Plan or (y) obligation or liability for Distributions under the Plan to any party who does not hold an Allowed Claim at the time of Distribution or who does not otherwise comply with the terms of the Plan.

### D.  Record Date for Distributions

In making any Distribution with respect to any Claim, the Reorganized Debtor shall be entitled to recognize and deal with, for all purposes hereunder, the Entity that is listed on the proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date, or with the new holder of such claim if such claim was transferred pursuant to Bankruptcy Rule 3001.

### E.  Delivery of Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Disbursing Agent at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Reorganized Debtor has not been notified in writing of a change of address.

### F.  Undeliverable and Unclaimed Distributions

In the event that any Distribution to any holder of an Allowed Claim made by the Disbursing Agent is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder; *provided*, *however*, that all Distributions to holders of Allowed Claims made by the Disbursing Agent that are unclaimed for a period of one (1) year after Distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Debtors' Estate and any entitlement of any holder of any Claims to such further obligation to make any Distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such Distributions shall be extinguished and forever barred; *provided*, *however*, that the holder of such Claim may receive future Distributions on account of such Claim by contacting the Reorganized Debtor at some point prior to the final Distribution.

### G.  Manner of Cash Payments Under the Plan

Except as otherwise provided herein, Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Reorganized Debtor.

### H.  Compliance with Tax Requirements

In connection with this Plan and all instruments issued in connection herewith and Distributions hereunder, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.

Notwithstanding the above, each holder of an Allowed Claim that is to receive a

Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.  Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### I.  No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

### J.  Interest on Claims

Excerpt as specifically provided in this Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Claim that is a Disputed Claim in respect of the period from the Effective Date to the date an interim or final Distribution is made thereon if and after the Disputed Claim becomes and Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

### K.  No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

### L.  Setoff and Recoupment

The Reorganized Debtor may setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that the Debtors or their bankruptcy estates may have against the holder of such Claim but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, their bankruptcy estates, or the Reorganized Debtor of any right of setoff or recoupment that any of them may have against the holder of any Claim.  Any such setoffs or recoupments may be challenged in Bankruptcy Court.  Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; *provided*, *however*, that such setoff or recoupment rights are timely asserted; *provided further* that all rights of the Debtors, their bankruptcy estates, and the Reorganized Debtor with respect thereto are reserved.

### M.  *De Minimis* Distributions; Charitable Donation

Notwithstanding anything to the contrary therein, the Reorganized Debtor shall not be required to make a Distribution to any holder of an Allowed Claim if the dollar amount of the Distribution is less than $15 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.  On or about the time that the final Distribution is made, the Reorganized Debtor may make a charitable donation with undistributed funds if, in the reasonable judgment of the Reorganized Debtor, the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to the holders of Claims who would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtors or the Reorganized Debtor.

### N.  United States Trustee Fees

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code shall be paid by the Reorganized Debtor.  Reorganized Debtor shall be responsible for Filing quarterly reports for the Reorganized Debtor in a form reasonably acceptable to the U.S. Trustee.

### O.  No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim or other request was required to be Filed or submitted and was first Filed or submitted after the applicable bar date in the Chapter 11 Cases, including, without limitation, the deadlines established herein, in the Bar Date Order or the Initial Administrative Bar Date Order, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Cases, without need for (a) any further action by the Reorganized Debtor or (b) an order of the Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

## ARTICLE V

## DISPUTED CLAIMS

### A.  No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, the Reorganized Debtor shall not make any Distribution on account of any Disputed Claim unless and until such Claim becomes Allowed.

### B.  Resolution of Disputed Claims

The Reorganized Debtor shall have the right to make and file objections to Claims in the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.  After the Effective Date, the Reorganized Debtor shall be the successor in interest to any objections to Claims filed by the Debtor before the Effective Date, and the Reorganized Debtor shall be responsible for prosecuting and/or settling those objections.

20161070.1

### C.  Objection Deadline

All objections to Disputed Claims shall be Filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing.

### D.  Estimation of Claims

At any time, the Reorganized Debtor may request that the Bankruptcy Court estimate any Disputed Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Disputed Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum a limitation on the Claim, the Debtors or the Reorganized Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

On the Effective Date, except for any Executory Contract that (a) previously expired or terminated by its own terms, (b) was previously rejected by an order of the Bankruptcy Court pursuant to section 365 of the  Bankruptcy Code, or (c) is the subject of a pending motion to assume or assume and assign as of the Confirmation Date, shall be deemed assumed and assigned to the Reorganized Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumption and assignment.

## ARTICLE VII

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.  Conditions Precedent

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.      The Confirmation Order has become a Final Order; and

2.      There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the releases

provided for herein.

### B.  Waiver

Notwithstanding the conditions in the Plan, the Debtors reserve, in their sole discretion, the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in Article VII. of the Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### ARTICLE VIII

### INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

### A.  Compromise and Settlement

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith settlement and compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement as fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Equity Interests.

### B.  Releases

**1.      Releases by the Debtors.  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, the Debtors hereby provide a full discharge and release to the Releasees (and each such Releasee so released shall be deemed to release and discharge the Debtor) from any and all Causes of Action, existing as of the Effective Date or thereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors (including those in any way related to the Chapter 11 Cases or the Plan), including, without limitation, those Causes of Action the Debtors would have been legally entitled to assert or that any Person would have been legally entitled to assert for or on behalf of the Debtors; provided, however, that the foregoing provisions of Article IX.B.1 of the Plan shall not operate to waive or release any Causes of Action expressly set forth in and preserved by the Plan.**

**2.      Release by Holders of Claims and Interests.  Notwithstanding anything contained herein to the contrary, effective as of the Effective Date and to the fullest extent authorized by applicable law, the Releasing Parties are deemed to have released and discharged the Debtors, the Reorganized Debtor, the Estates, and the other Released Parties from any and all claims, interests, obligations, rights, suits, damages, causes of**

action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of any Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtors and any Released Party, the restructuring of claims and interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, or any related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence.  For the avoidance of doubt, the Debtors and the Reorganized Debtor shall not be released from any Administrative Claims, Priority Claims, or Claims in Classes 1, 2, 3, 4, 5 and 6 described herein, to the extent that such claims are receiving the treatment described herein.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

3.    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in Article IX.B of the Plan pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all holders of Claims and Equity Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Debtors or Releasing Parties, subject to Article IX.B of the Plan, asserting any Claim or Cause of Action thereby released.

C.  Exculpation

Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Entity for any Claims and Causes of Action arising after the Petition Date, including any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Sale or in connection with the Chapter 11 Cases; provided, however, that the foregoing provisions of Article IX.C of the Plan shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its duties.

D.  Preservation of Causes of Action

1.  Vesting of Causes of Action

    a.  Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors or the Estates may hold against any Person shall vest in the Reorganized Debtor on and after the Effective Date.

    b.  Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Reorganized Debtor shall have the exclusive right, but not the obligation, to investigate, institute, prosecute, abandon, settle or compromise any Causes of Action, in his or her sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases.

2.  Preservation of All Causes of Action Not Expressly Settled or Released

    a.  Unless a Cause of Action against any Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtor and/or the Estate expressly reserve such Cause of Action for the Reorganized Debtor and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or the Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt,  the releases contained in Article IX.B.1 of the Plan) or any other Final Order (including the Confirmation Order).  In addition, the Debtors and the Estates expressly reserve the right of the Reorganized Debtor to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

    b.  Subject to the description in the immediately preceding paragraph, any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who have received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from or to the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Person filed a proof of Claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors have objected to any such Person's proof of Claim; (iii) any such Person's Claim was included in the Schedules; (iv) the Debtors have objected to any such Person's scheduled Claim; or (v) any such Person's scheduled Claim has been identified by the Debtors as disputed, contingent or unliquidated.

20161070.1

### E.  Injunction

1.      From and after the Effective Date, all Persons are permanently enjoined from commencing or continuing in any manner against the Debtors, the Estates, the Reorganized Debtor, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

2.      Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtor, their successors and assigns, and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

3.      The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests of any nature whatsoever, against the Debtors or any of their assets or properties.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

4.      Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from:

a.      Commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Estates, the Reorganized Debtor, their successors and assigns, and their assets and properties;

b.      Enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtors, the Estates, the Reorganized Debtor, their successors and assigns, and their assets and properties;

c.      Creating, perfecting or enforcing any encumbrance of any kind against the Debtors, the Estates, the Reorganized Debtor, their successors and assigns, and their assets and properties;

d.      Asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or Estates of the Debtors, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed proof of claim; and

e.      Commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim, Equity Interest or Cause of Action released or settled hereunder.

20161070.1

5.      For the avoidance of doubt, the plaintiff in the action *Hiser v. Buehler, Inc.*, Civil Action No. 4:18-cv-0227, United States District Court for the Southern District of Indiana may pursue the proceeds of the Debtors' insurance policies, however, in no case are the plaintiffs in those actions or any insurance carrier to pursue the Debtors, the Estates, the Reorganized Debtor, or their successors and assigns.

### F.  Releases of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all Liens against property of the Estate shall be fully released and discharged.

## ARTICLE IX

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Reorganized Debtor and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2.      Grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Cases by the Debtors for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      Resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4.      Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, provided, however, that the Debtors and the Estates and, following the Effective Date, the Reorganized Debtor shall reserve the right of the Reorganized Debtor to commence actions in all appropriate jurisdictions;

20161070.1

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan;

7.      Resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.      Issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.      Enforce the releases and injunctions set forth in Article IX of the Plan;

10.     Resolve any cases, controversies, suits or disputes with respect to the releases, injunction, and other provisions contained in Article IX of the Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

11.     Enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

12.     Resolve any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or documents adopted in connection with the Plan; and

13.     Enter an order and/or the Final Decree concluding the Chapter 11 Cases.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

### A.  Modification of Plan

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right, in accordance with the Bankruptcy Court and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency on the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### B.  Revocation of Plan

The Debtors reserves the right to revoke or withdraw the Plan prior to the entry of the

Confirmation Order and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

### C.  Binding Effect

On the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not holder is entitled to a Distribution under the Plan.

### D.  Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### E.  Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Indiana, without giving effect to the principles of conflict of laws thereof.

### F.  Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred. Neither the filing of the Plan, any statement or provisions contained herein, nor the taking of any action by the Debtors or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the holders of Claims or Equity Interests or other parties in interest or (2) any holder of a Claim or other party in interest prior to the Effective Date.

### G.  Article 1146 Exemption

Pursuant to section 1146(g) of the Bankruptcy Code, and transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in

20161070.1

30

the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### H.  Section 1125(e) Good Faith Compliance

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtors and each of its Representatives have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

### I.  Further Assurances

The Debtors, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### J.  Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by first-class U.S. mail, postage prepaid as follows: James R. Irving, **Bingham Greenebaum Doll LLP**, 3500 PNC Tower, 101 South Fifth Street, Louisville, KY 40202, Telephone: (502) 587-3606, Facsimile: (502) 540-2215, E-mail: jirving@bgdlegal.com.

### K.  Filing of Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

### L.  No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e), 6004(h) and 7062.

### M.  AWG Post-Confirmation Credit

The Debtors continue to purchase groceries and supermarket products from AWG. Pursuant to AWG credit terms, the Debtors have pledged a lien and security interest in and to AWG Equity (consisting of certain stock in AWG and any patronage or member deposits held by the cooperative from time to time).  To maintain the Debtors' credit terms uninterrupted and notwithstanding section 522 of the Bankruptcy Code, the Debtors' current and future AWG Equity shall continue to be pledged to AWG as collateral for its open account with AWG to support its ongoing purchase of groceries.  The Debtors' pre-Petition Date membership agreement and security agreement shall remain in full force and effect, and to the extent such agreements are executory contracts, they shall be Assumed Contracts as provided herein this

Plan.

**N.  Survival of Carve-Outs**

Notwithstanding anything else to the contrary, the Carve-Outs established under the orders authorizing the use of cash collateral entered in the Chapter 11 Case shall survive to the extent that the Debtors' professional fees are not fully paid as of the Effective Date.


Dated: May 22, 2019

**Buehler, Inc. and Buehler, LLC**

By:  /s/ David Buehler
Name:  David Buehler
Title: President